22
Exh A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHAEL A. GENORD, M.D.**, et al,

        Plaintiffs,

vs.

    Case No.: 03-72950
    HON. BERNARD A. FRIEDMAN
    MAGISTRATE JUDGE VIRGINIA M. MORGAN

**BLUE CROSS AND BLUE SHIELD OF
MICHIGAN**, a Michigan non-profit
healthcare corporation,

        Defendant.

---

**WILLIAM H. HORTON** (P31567)
**LINDA M. WATSON** (P45320)
**SEAN M. WALSH** (P48724)
Attorneys for Plaintiffs
COX, HODGMAN & GIARMARCO, P.C.
Tenth Floor Columbia Center
101 W. Big Beaver Road
Troy, Michigan 48084-5280
☎(248) 457-7000

**MICHAEL P. QUAINE** (P49369)
Co-Counsel for Plaintiffs
23255 Commerce Drive
Farmington Hills, Michigan 48335
☎(248) 699-5562

**JOSEPH A. FINK** (P13428)
**KATHLEEN A. LANG** (P34695)
**JONATHAN S. GROAT** (P58547)
Attorneys for Defendant
DICKINSON WRIGHT, PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
☎(313) 223-3500

'04 FEB -9 P4:38
U.S. DIST COURT CLERK
EASTERN DIST MICH.
DETROIT-PSG

---

# PLAINTIFFS' BRIEF IN RESPONSE TO
# DEFENDANT'S MOTION TO DISMISS



*(Left margin vertical text)* COX HODGMAN & GIARMARCO P.C. · Attorneys and Counselors at Law · Tenth Floor Columbia Center · 101 West Big Beaver Road · Troy, Michigan 48084-5280 · Phone (248) 457-7000 · Fax (248) 457-7001

## INTRODUCTION

Defendant's motion should be denied for three principle reasons. **First**, Plaintiffs' RICO claim concerns Defendant's deceptive conduct towards its providers/vendors and not toward its insureds. Therefore, the claim is not predicated on activities that constitute the business of insurance and it is not barred by the McCarran-Ferguson Act. This result was recently confirmed by a Florida federal court when it upheld an identical RICO claim by providers like Plaintiffs. See In Re: Managed Care Litigation, No. 00-1334-MD-Moreno, 2003 U.S. Dist. LEXIS 22066, *38-46 (S.D. Fla. Dec. 8, 2003). **Second**, Plaintiffs do not lack standing and have pleaded their RICO with the particularity required in Rule 9(b). **Third**, the Michigan Non-Profit Act expressly allows private actions for damages, and therefore, there can be no doubt that Plaintiffs have a private right of action under the Non-Profit Act.

## DEFENDANT'S MOTION SHOULD BE DENIED
## AS TO PLAINTIFFS' RICO CLAIM

As demonstrated infra, Defendant's argument that Plaintiffs' RICO claim is barred by the McCarran-Ferguson Act relies on mere sleight of hand and mis-direction. Similarly, its arguments that Plaintiffs lack standing or have somehow fallen short of pleading a cognizable claim under Rule 9(b) simply ignores the pleading requirements of RICO and the allegations of

COX HODGMAN & GIARMARCO, P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

the Amended Complaint. As a result, Plaintiffs' RICO claim should stand.[1]

## 1.    PLAINTIFFS' RICO CLAIM IS NOT BARRED BY MCCARRAN-FERGUSON.

To bar Plaintiffs' RICO claim under the McCarran-Ferguson Act, Defendant must establish all three of the following criteria:

1.    RICO does not specifically relate to the business of insurance.

2.    The state statute at issue was enacted for the purpose of regulating the business of insurance.

3.    Application of RICO would invalidate, impair, or supersede the state statute at issue.

See, e.g., Moore v Liberty Nat.'l Life Ins. Co., 267 F.3d 1209, 1220 (11th Cir. 2001) (quotations omitted). Defendant does not even come close to establishing the final two criteria. Indeed, even a cursory reading of Plaintiffs' First Amended Class Action Complaint (the "Amended Complaint") demonstrates that Plaintiffs' RICO claim has absolutely nothing to do with conduct that constitutes "the business of insurance." Exhibit A, Amended Complaint at ¶¶4-11, 20-38. To the contrary, Plaintiffs' RICO claim concerns the deceptive business practices employed by an insurance **company** to avoid timely paying its vendors, and the Supreme Court long ago advised that "care must be taken in distinguishing the business of insurance from the business of insurance companies." Group Life & Health Ins. Co. v Royal Drug Co., 440 U.S. 205, 221 (1979) (emphasis added). Because Defendant cannot establish the final two criteria required for preemption by McCarran-Ferguson, its motion must fail.

---

[1]Consequently, the Court should also refuse to dismiss Plaintiffs' pendent state law claims.

COX HODGMAN & GIARMARCO,P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

**A.      The Conduct Complained Of In Plaintiffs' RICO Claim Does Not Constitute The Business Of Insurance.**

In their Amended Complaint, Plaintiffs – vendors of services to Defendant — complain of Defendant's improper use of a RICO enterprise to defraud its creditors. Amended Complaint at ¶¶4-11, 21-38. In determining whether a particular practice addressed by a state statute constitutes the "business of insurance," the following three factors are relevant:

1.      Whether the practice has the effect of transferring or spreading a policyholder's risk;

2.      Whether the practice is an integral part of the policy relationship between the insurer and insured; and

3.      Whether the practice is limited to entities within the insurance industry.

Union Labor Life Ins. Co. v Pireno, 458 U.S. 119, 129 (1982).  Here, Plaintiffs are simply vendors of Defendant, and therefore, none of the foregoing three indicators of a policy-holder nexus is implicated by Plaintiffs' RICO claim.

Defendant attempts to skirt this critical flaw in its argument by first misrepresenting the holding of a recent U.S. Supreme Court decision and then by mis-directing the Court to decisions where — unlike here — an insured/insurer nexus was present. Defendant argues that the U.S. Supreme Court in U.S. Dept. of Treas. v Fabe, 508 U.S. 491 (1993), "issued an expansive definition of the phrase 'state law regulating insurance'" and rejected and nullified the tests stated in Royal Drug and Pireno.  The Fabe court, however, did not overrule Royal Drug or Pireno.  To the contrary, the Supreme Court held that, to the extent a state law regulates the relationship between an insurance company and its creditors, it does not regulate the business of insurance.  Id. at 508.  In fact, a critical holding — which Defendant

COX HODGMAN & GIARMARCO P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

apparently overlooked — appears in the <u>Fabe</u> decision and provides as follows:

> We hold that the Ohio priority statute, to the extent that it regulates policyholders [i.e., insureds], is a law enacted for the purpose of regulating the business of insurance. To the extent that it is designed to further the interests of other creditors [i.e., Plaintiffs], however, <u>it is not a law enacted for the purpose of regulating the business of insurance</u>.

<u>Id</u>. (emphasis added). Lest there be any confusion regarding the import of the <u>Fabe</u> decision or the intellectual dishonesty permeating Defendant's argument, the <u>Managed Care</u> court offered the following guidance:

> Nothing in <u>Fabe</u>, however, suggests that the [McCarran-Ferguson] Act sweeps within its scope all laws that affect insurance companies. Indeed, the Supreme Court in <u>Fabe</u> supported the interpretation of the "business of insurance" as focusing on the relationship between the insurance company and the policy holder. Here, the Plaintiffs' relationship to the insurer is ancillary to the actual insurance contract itself. The contracts of insurance were between Defendants and the insureds, not between Defendants and the individual providers (service agreements). Accordingly, the Court finds that the relationship between insurers and providers falls outside the "business of insurance" and thus the [McCarran-Ferguson] Act does not pose a preemption issue.

<u>In Re: Managed Care Litigation</u>, 2003 U.S. Dist. LEXIS 22066 at *44-45. Like the RICO claims alleged in <u>Managed Care</u> and <u>Royal Drug</u>, Plaintiffs' claim concerns the relationship between an insurer and its vendors, and any argument that its relationship with Defendant implicates the business of insurance is mere sophistry. <u>Id</u>.

Next, Defendant cites <u>American Chiropractic Ass'n</u> v <u>Trigon Healthcare</u>, 151 F. Supp. 2d 723 (W.D. Va. 2001) for the fantastic proposition that "[t]he McCarran-Ferguson Act bars the application of RICO to cases involving claims by providers of health care services against insurers." Defendant's Brief at 5. Defendant's reliance is once again misplaced. As the

5

Managed Care court made clear, "the relationship between insurers and providers falls outside the business of insurance. . . ." In Re: Managed Care Litigation, 2003 U.S. Dist. LEXIS 22066 at 45.  The facts of American Chiropractic are also inapposite.  There, the plaintiffs — a combined group of providers and insureds — directly attacked the defendants-insurers' coverage decisions, alleging that they improperly denied their plaintiffs-insureds coverage for chiropractic services.  American Chiropractic Ass'n, 151 F. Supp. 2d at 728.  Unlike the American Chiropractic plaintiffs, however, these Plaintiffs include no policy-holders and make no claim regarding Defendant's performance of its policies of insurance.  In fact, Plaintiffs make no claim whatsoever that even touches upon Defendant's relationship with its insureds.

Defendant's sleight of hand continues.  At page 7 of its Brief, Defendant — citing Everson v BCBSO, 898 F. Supp. 532 (N.D. Ohio 1994) — argues that "the statutory mandates governing BCBSM's contractual relationship with its providers, such as Plaintiffs, directly impacts how BCBSM meets its regulatory mandate to members and subscribers. . . ."  Once again, however, Defendant has missed the point.  Everson concerned the defendant-insurer's contractual relationship with its insureds because the plaintiff (an insured) challenged the method and manner in which co-payments were calculated by the insurer.  Everson, 898 F. Supp. at 535-538.

Here, unlike the plaintiffs in American Chiropractic and Everson, Plaintiffs are no different than the "creditors" referred to in Fabe, and their claim is simply that Defendant employed a RICO enterprise to deceive its vendors.  Amended Complaint at ¶¶20-38.  As a result, Plaintiffs' RICO claim does not concern the business of insurance and is not barred by McCarran-Ferguson.  See Royal Drug, 440 U.S. at 214 (agreements between an insurance

6

company and pharmacies were not barred by McCarran-Ferguson because, "[t]he pharmacy agreements do not involve any underwriting or spreading of risk, but are merely arrangements for the purchase of goods and services by Blue Shield. . .[s]uch cost savings arrangements may be sound business practice and may well inure ultimately to the benefit of policyholders in the form of lower premiums, but they are not the business of insurance.") (internal quotation omitted); see also Davies v Centennial Life Ins. Co., 128 F.3d 934, 941-942 (6th Cir. 1997) (the rescission of a policy based on false statements made in the application process is not the business of insurance); Foster v Blue Cross and Blue Shield of Michigan, 969 F. Supp. 1020, 1028 (E.D. Mich. 1997) (a claim for misrepresentation or refusal to pay a claim does not amount to the business of insurance under the Michigan Non-Profit Act); Pritt v Blue Cross and Blue Shield of West Virginia, Inc., 699 F. Supp. 81, 83 (S.D. W. Va. 1988) (the performance or breach of a provider agreement does not constitute the business of insurance).[2]

**B.    Plaintiffs' RICO Claim Does Not Invalidate, Impair Or Supercede The Non-Profit Act.**

Mistakenly presuming that Plaintiffs base their RICO claim on a violation of the Non-Profit Act or on conduct constituting the business of insurance, Defendant argues that the absence of a private right of action under the Non-Profit Act necessitates a finding that Plaintiffs' RICO claim invalidates, impairs or supercedes the Non-Profit Act. Defendant's Brief at 9-10.

---

[2]The conclusion that McCarran-Ferguson does not bar Plaintiffs' RICO claim is borne out by a review of the myriad Michigan cases involving this Defendant's failure to make payments to its other vendors. See Matthews v BCBCM, 456 Mich. 365 (1998) (claim for malicious prosecution of dentist provider); BCBCM v Folkema, 174 Mich. App. 476 (1988) (claim that BCBSM paid for fraudulent services); BCBCM v Paul, 174 Mich. App. 188 (1988) (claim of breach of contract against provider); Hinshaw v BCBSM, 142 Mich. App. 280 (1985) (claim of breach of provider agreement).

COX HODGMAN & GIARMARCO, P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

Once again, however, Defendant's misapprehend Plaintiffs' claim. Plaintiffs' RICO claim is not one for violation of the Non-Profit Act; instead it is simply a claim of defrauding vendors, and the presence or absence of a private right of action is irrelevant. See, e.g., Foster, 969 F. Supp. at 1029 (". . .even though Plaintiff may not bring a direct cause of action against Blue Cross for violation of [sections of the Non-Profit Act], those laws still create requirements for insurance companies, and a violation may result in liability. . .").

Indeed, in a strikingly similar case, the Pennsylvania District Court held that a RICO claim identical to one alleged by Plaintiffs did not invalidate, impair or supercede a similar insurance act, even though the act provided the plaintiffs with no private right of action. See Grider v Keystone Health Plan Central, Inc., No. 2001-CV-05641, 2003 U.S. Dist. LEXIS 16551 (E.D. Pa. Sept. 18, 2003). The plaintiffs in Grider — just like these Plaintiffs — alleged that their insurers, "used mail and wires to defraud plaintiffs by wrongfully delaying and denying compensation due. . ." under similar provider agreements. Id. at 6-7. The court upheld the claim because Pennsylvania has not forbidden private rights of action for fraud against insurers. Id. at 22-27. Michigan too has not prohibited private rights of action against insurers for common law fraud, and therefore, Plaintiffs' RICO claim is likewise not precluded by McCarran-Ferguson.

## 2.    PLAINTIFFS HAVE ADEQUATELY ALLEGED A COGNIZABLE RICO CLAIM.

Defendant's conclusory pleading attacks ring as hollow as its preemption argument and demonstrates Defendant's misunderstanding of federal pleading requirements and the RICO Act. To begin with, Rule 8(a) — the basic federal guideline for federal pleadings — only

8

requires a plaintiff to provide facts sufficient to give notice of its claim to the defendant:

> [t]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant <u>fair notice</u> of what the plaintiff's claim is and the grounds upon which it rests.

<u>Grider</u>, 2003 U.S. Dist. LEXIS 16551 at 10.  (emphasis added).  The heightened fraud pleading requirements of Rule 9(b) do not alter this aim.  To the contrary, they are simply designed to better achieve the purposes of Rule 8(a).  To satisfy Rule 9(b)'s fraud pleading requirements, a plaintiff need only plead the "who, what, when, where, and how: the first paragraph of any newspaper story" of an alleged fraud.  <u>In Re:  Telxon Corp. Sec. Litigation</u>, 133 F. Supp. 2d 1010, 1025 (N.D. Ohio 2000) (quoting <u>DiLeo</u> v <u>Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990)); <u>see also</u> <u>Gupta</u> v <u>Terra Nitrogen Corp.</u>, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998).  As Defendant correctly points out, "[t]he purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud."  <u>Advocacy Org. For Patients and Providers</u> v <u>Auto Club Ins. Assoc.</u>, 176 F.3d 315, 322 (6th Cir. 1999).  Here Plaintiffs have certainly met the pleading standards of Rules 8(a) and 9(b), and, in assessing the sufficiency of those allegations under Rule 12(b)(6), the court must accept all of Plaintiffs' well-pled factual allegations as true and draw all reasonable inference in favor of Plaintiffs.  <u>Grider</u>, 2003 U.S. Dist. LEXIS 16551 at 8-9.

## A.   **Plaintiffs Have Alleged Injury And Do Not Lack Standing to Assert A Rico Claim.**

Defendant's conclusory argument that Plaintiffs have not alleged any injury proximately caused by the predicate acts of racketeering activity or by investment of the

COX HODGMAN & GIARMARCO, P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • '01 West B.g Beaver Road • Troy, Michigan 48084-5286 • Phone (248) 457-7000 • Fax (248) 457-7003

proceeds simply ignores the allegations of the Amended Complaint. Amended Complaint at ¶¶10-11, 25, 31-33, 37-38. To allege standing under RICO, Plaintiffs need only allege injury to their "business or property by reason of a violation of section 1962." 18 U.S.C. §1964(c). Plaintiffs have not only sufficiently alleged standing under section 1962(c), but Plaintiffs have also pleaded an investment injury sufficient to find standing under section 1962(a).[3]

### (1).   Section 1962(c) Injury.

Plaintiffs allege that Defendant used the mail and wires to deceitfully advise Plaintiffs of: (1) new coding guidelines and claims procedures to induce Plaintiffs to treat Defendant's subscribers and bill Defendant directly; and (2) that there was nothing wrong with its software or its processing of Plaintiffs' claims, despite its continuing denial of clean claims. Amended Complaint at ¶¶7-10, 21, 25-30. Plaintiffs relied on these misrepresentations by: (1) treating Defendant's subscribers without demanding payment from them; (2) submitting claims to Defendant in accordance with its instructions; and (3) re-submitting wrongfully rejected, clean claims, causing Plaintiffs additional administrative expenses and costs. Id. at ¶¶8, 29-30, 37-38. Unbeknownst to Plaintiffs, however, Defendant intended to and did systematically and routinely reject these clean claims by way of the mail and wires and advised Plaintiffs that there were no problems with its systems. Id. at ¶¶21, 25-38. These clean claims were systematically and routinely rejected by Defendant in order to retain possession and use of Plaintiffs' funds.

---

[3]It is worth noting that several courts have held that §1962(a) of RICO does not even require that a plaintiff allege an investment injury. See In Re: Managed Care Litigation, 2003 U.S. Dist. LEXIS 22066 at 6 (citing its prior holding in In Re: Managed Care Litigation, 150 F. Supp. 2d 1330, 1351-52 (S.D. Fla. 2001)); Busby v Crown Supply, 896 F.2d 833, 836-840 (4th Cir. 1990); Avirgan v Hull, 691 F. Supp. 1357, 1362 (S.D. Fla. 1988), aff'd, 932 F.2d 1572 (11th Cir. 1991).

Tenth Floor Columbic Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

COX
HODGMAN &
GIARMARCO, P.C.
Attorneys and Counselors at Law

<u>Id</u>.

### (2).    **Section 1962(a) Injury**.

Plaintiffs have also alleged facts demonstrating that they have been injured in their business by the investment of these ill gotten proceeds of Defendant's racketeering activity because Defendant: (1) receives and "continues to receive income from its participation as a principal in an extensive pattern of racketeering activity" (Amended Complaint at ¶33); and (2) utilizes the income to further operate and invest in the RICO Enterprise and to continue to induce Plaintiffs to treat its subscribers while continuing to systematically and routinely delay and deny payment of Plaintiffs' claims (Amended Complaint at ¶¶9, 10, 33 and 37). <u>See, e.g.</u>, <u>Newmyer</u> v <u>Philatelic Leasing, Ltd.</u>, 888 F.2d 385, 396 (6th Cir. 1989) (allegations that Defendant operated its RICO enterprise with funds derived from prior racketeering activity state a claim under section 1962(a)).[4]

### B.    **Plaintiffs Have Adequately Alleged A RICO "Enterprise."**

Contrary to Defendant's naked assertion, the "enterprise" that Plaintiffs have alleged is sufficient, and Rule 9(b) does not alter that result. Indeed, Rule 9(b) does not even apply to the allegations of a RICO <u>enterprise</u>. <u>See, e.g.</u>, <u>Grider</u>, 2003 U.S. Dist. LEXIS at *69. ("[t]here is no heightened pleading standard for allegations of RICO enterprise.")

Some of the named entities within the "enterprise" alleged by Plaintiffs include HBOC McKesson, a third-party entity that develops claims processing systems or components,

---

[4]The <u>Vemco</u> decision relied upon by Defendant in support of its argument that an investment injury has not been alleged only serves to reinforce this holding by recognizing the distinction made by the <u>Newmyer</u> court. <u>Vemco, Inc.</u> v <u>Camardella</u>, 23 F.3d 129, 132 (6th Cir. 1994)

COX
HODGMAN &
GIARMARCO,P.C.
Attorneys and Counsellors at Law
Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

BCBSM Claims Support and other third-party entities utilized by Defendant to facilitate claims processing, and Electronic Data Interchange ("EDI"), which allows for electronic claim submissions and information on previously transmitted claims.  Amended Complaint at ¶23.  Plaintiffs identification of the group of individuals associated in fact that constitute the "enterprise" and are involved in claims processing systems and conduct is more than sufficient.  See In Re: Managed Care Litigation,2003 U.S. Dist. LEXIS 22066 at *13-14 ("a RICO enterprise may be an 'amoeba-like' structure of loose informal association") (citation omitted); see also In Re: Managed Care Litigation, 185 F. Supp. 2d 1310, 1322 (S.D. Fla. 2002) ("An association-in-fact enterprise requires that the plaintiff identify a group of persons who are associated together for a 'common purpose of engaging in a course of conduct.  This association provides a vehicle for the predicate acts") (quoting U.S. v Turkette, 452 U.S. 576, 583 (1981)); Haroco, Inc. v Am. Nat.'l Bank and Trust Co. of Chicago, 747 F.2d 384, 402-03 (7th Cir. 1984) (a subsidiary corporation can be liable under section 1962(c) for conducting the affairs of its parent corporation through a pattern of racketeering).

## C.   Plaintiffs Sufficiently Allege How Defendant "Controls" The Enterprise.

Like its other arguments, Defendant's assertion that Plaintiffs have alleged only the bare conclusion that Defendant "controls" the RICO enterprise strains credulity.  The Amended Complaint alleges that Defendant controls the RICO enterprise and participates in its affairs in the following manners:

> A.    By designing, developing, and implementing new computer systems to process new coding guidelines and claims processing procedures to be used in order to reimburse provider claims;

12

B.    By disseminating and distributing those new coding guidelines and claims processing information through meetings, correspondence, and publications, including The Record, at which attendees and recipients share and receive billing information;

C.    By approving, engaging, and requiring coding guidelines, standards and forms to be used by its subsidiaries, third party entities, claims support, EDI, and others, instructions, such as through The Record and other correspondence, to systematically and routinely deny clean claims;

D.    By dictating the use of those coding guidelines, standards and instructions within the new computer system to systematically and routinely deny and delay payment of clean claims;

E.    By directing, engaging and paying HBOC McKesson and other third party entities to develop the automated systems for editing and manipulating the claims information which systematically and routinely deny clean claims;

F.    By dictating and supporting BCBSM Claims Support, EDI and other third-party entities as a common entry point for physician claim data to assist Defendant in processing claims in a coordinated fashion in which they are systematically and routinely denied.

Amended Complaint at ¶25. Furthermore, the Amended Complaint indicates how Defendant directs the affairs of the enterprise through its role with the BCBSM Enterprise:

(1) Defendant and its subsidiaries that provide healthcare services to tens of thousands of enrollees in various healthcare plans statewide; (2) other health insurance companies not named as defendants; (3) HBOC McKesson and other third-party entities which develop claims processing systems or components for BCBSM; (4) BCBSM Claims Support and all other third-party entities utilized by Defendant to facilitate claims processing; (5) and Electronic Data Interchange ("EDI"). These entities are associated in fact as part of a health care network with the common purpose of facilitating medical services, through coding procedures and claims processing, and earning profits from

13

providing those services.

Amended Complaint at ¶23.  Clearly, the allegations of the Amended Complaint meet the minimal pleading requirements of Rule 8(a) as applied in Grider and they provide Defendant with adequate notice of how Defendant "controls" the RICO enterprise. See Grider, 2003 U.S. Dist. LEXIS at *76 (allegations that, "[d]efendants maintain an interest in and control of the Managed Care Enterprise and also conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity" were held sufficient to plead control of the RICO enterprise); see also Reves v Ernst & Young, 507 U.S. 170, 179 (1993).  Defendant has sufficient notice to enable it to formulate a response and cannot articulate a credible argument to the contrary.

**D.      The Predicate Acts Of Mail And Wire Fraud Are Pled With Particularity.**

Plaintiffs sufficiently alleged the predicate acts of mail and wire fraud with the particularity required by Rule 9(b).  The false statements that Defendant made and that Plaintiffs relied upon consist of the communications Defendant made through "The Record," correspondence sent to Plaintiffs through the mail and wires and through Defendant's provider inquiry service.  Those misrepresentations made and relied on include but are not limited to the following:

A.      **The April 2002 issue of The Record (Defendant's physician publication).**  Exhibit D.  BCBSM notified its providers of changes in coding procedures that had gone into effect on November 27, 2001, for annual gynecological exams, requiring providers to begin using an S code combined with an E&M code, otherwise, providers would not be reimbursed; despite these representations to providers that BCBSM's new system was ready to accept the new codes and therefore pay provider claims, clean

14



COX HODGMAN & GIARMARCO, P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

claims submitted under these codes were systematically and routinely rejected by BCBSM;

B.  **The January 2003 issue of The Record.**  Exhibit E. BCBSM notified providers that it would start accepting the Q code for payment beginning September 2002; however, despite these representations that BCBSM's system would accept this code and pay provider claims, BCBSM's system did not accept this code and clean claims submitted under this code were systematically and routinely rejected by BCBSM;

C.  **Correspondence from BCBSM.**  Exhibit F. Sonia A. Parks, M.D., a BCBSM employee in the Physician's Ombudsman Department, sent a letter to Plaintiff Genord dated February 7, 2003, again representing that if the physicians followed BCBSM billing codes and instructions, they would be timely paid. Relying on these further representations and requirements to be followed in order to have claims reimbursed, Plaintiffs continued to submit claims accordingly. These clean claims, however, were still systematically and routinely rejected by BCBSM;

D.  **Additional Correspondence.**  Additional correspondence from BCBSM which concealed or failed to disclose that BCBSM would and did use techniques, procedures, systems and software that deprived or delayed Plaintiffs and class members of payment on clean claims submitted in accordance with BCBSM instructions, representations, and requirements;

E.  **A letter from BCBSM Vice President of Medical Affairs.**  Exhibit G. Chief Medical Officer Thomas L. Simmer, M.D. of BCBSM sent a letter to Plaintiff Genord dated March 2003 stating that Defendant has worked diligently in correcting processing problems which were allegedly causing the rejections. However, Defendant failed to rectify the problem represented, and Defendant continued for several months to systematically and routinely reject clean claims submitted and resubmitted by Plaintiff in accordance with Defendant's continued instructions to follow the new coding procedures; and

15

> F.    **Provider vouchers.**  Provider vouchers received by mail
> and wire from BCBSM and its third-party entities that
> facilitated the claims process, <u>systematically and routinely
> contained false rejections of clean claims when BCBSM
> was well aware after all of the complaints by physicians
> that the rejections created systematically and routinely by
> the computer system were false rejections</u>.

Amended Complaint at ¶27 (emphasis added).  As the foregoing allegations make clear, the

predicate acts are identified and the time, place, content, and distributor of the fraudulent

misrepresentations that Plaintiffs relied upon are identified.  <u>Id</u>.

Defendant's fraudulent scheme of delaying and denying payment of clean claims

by using the mail and wires, and the resulting injuries to Plaintiffs' business by having clean

claims systematically and routinely denied, is identified with excruciating particularity.  <u>See</u>

<u>Kukuk</u> v <u>Fredal</u>, No. 99-CV-74014-DT, 2001 U.S. Dist. LEXIS 16419 (E.D. Mich. Aug. 1, 2001)

(the Sixth Circuit reads F.R.C.P. 9(b) liberally).  Accordingly, Plaintiffs have adequately pleaded

predicate acts in accordance with F.R.C.P. 9(b).

### E.    The Predicate Acts Pled By Plaintiffs Are Not Contract Claims and Defendant Acted With An Intent To Deceive.

To sidestep its liability, Defendant argues — again in the face of allegations to the

contrary — that Plaintiffs allege only a breach of contract by Defendant and not the intentional

conduct necessary to plead mail or wire fraud.  But as the <u>Managed Care</u> court pointed out,

"contractual settings can provide the context for RICO mail fraud claims if there is a pattern of

misrepresentations amounting to both a scheme to defraud and racketeering activity."  <u>In Re:</u>

<u>Managed Care Litigation</u>, 2003 U.S. Dist. LEXIS 22066 at *22.   In this case, Defendant's

reliance on the existence of contracts between the parties may not serve as a shield from liability

16

for its fraudulent scheme. Id.[5]

In addition to its mistaken reliance on the existence of contracts among the parties to excuse its fraud, Defendant argues that Plaintiffs alleged no facts to show that Defendant acted intentionally. In support of that argument, however, Defendant offers only the bald assertion that, "Plaintiffs do not allege any concrete facts showing that [Defendant] knew and intended that Plaintiffs would be improperly denied reimbursement." Defendant's Brief at 25. Defendant's argument predictably ignores the expanse of time over which Defendant has engaged in this conduct, as well as the of repeated notice to Defendant of the continuing problem.

Here again, a casual review of the allegations of the Amended Complaint makes Defendant's fraudulent intent the only plausible conclusion. In particular, Plaintiffs allege that Defendant relied on its overwhelming market dominance in the Michigan health insurance industry when it mandated new billing and coding guidelines for Plaintiffs' services in the Spring of 2002 with full knowledge that its claims processing systems were not up to the task. Amended Complaint at ¶¶7-9, 21-23, 25-30. Defendant felt free to take this action because it also believed that Plaintiffs would not risk challenging Defendant — the 500 lb. Gorilla in the industry — on its claims processing. Amended Complaint at ¶22. Defendant informed Plaintiffs

---

[5]The court in In Re: Managed Care Litigation chided the defendant-insurers for their reliance on the existence of provider contracts among the parties to escape the plaintiffs' fraud allegations, holding that, "[w]hile defendants insist on focusing on the individual contractual level in this class action, the plaintiffs' allegations of a fraudulent scheme takes place on a far wider systematic level — a significant distinction. Accordingly, while their claims are embedded in a contractual relationship, Plaintiffs' allegations of mail fraud continue to be viable." In Re: Managed Care Litigation, 2003 U.S. Dist. LEXIS 22066 at *23-24.

COX HODGMAN & GIARMARCO, P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

of these new coding guidelines by sending publications — like "The Record" — through the mail and wires to Plaintiffs. Amended Complaint at ¶27. When Plaintiffs sent their clean claims to Defendant in accordance with these instructions, Defendant systematically and routinely denied Plaintiffs' clean claims for months, all the time still instructing Plaintiffs to submit and resubmit claims according to the new procedures. Amended Complaint at ¶¶28-38. Each time Plaintiffs submitted a clean claim, Defendant denied the claim and falsely advised Plaintiffs that it was improper in some way. Even if one were to accept that Defendant implemented its new coding system in good faith — which it clearly did not — its continuing denial of clean claims after being repeatedly notified of and admitting improper delays and improper denials makes Defendant's intent plain. Amended Complaint at ¶¶27, 30.

But there's more. Defendant finally admitted its processing failures and then continued to make fraudulent misrepresentations to Plaintiffs by advising them, through correspondence sent through the mail and wires, that the problem was in repair. Id. In fact, Defendant sent Plaintiffs correspondence indicating diligent efforts in rectifying the system problem. Id. Predictably, however, Plaintiffs' clean claims continued to be systematically and routinely rejected.

The delayed payments — sometimes as long as twelve to fifteen months — the denied payments and the number of abandoned claims due to the need to repeatedly re-submit clean claims allowed Defendant to retain millions of dollars belonging to Plaintiffs and to earn interest on that money. Defendant perpetrated this intentional fraudulent scheme by using the mail and wires to convey the misrepresentations to Plaintiffs. See, e.g., Amended Complaint at ¶27. Accordingly, Plaintiffs do not allege the denial of claims — the breaches of the parties' contracts

18

— as the predicate acts.  To the contrary, Plaintiffs allege that Defendant sent correspondence to Plaintiffs through the mail and wires on how to submit claims for payment, <u>knowing</u> that its processing system did not work, that the clean claims would continue to be rejected, and that it had no intention of timely paying Plaintiffs' clean claims or working to rectify the problem in a prompt manner.

## PLAINTIFFS HAVE A PRIVATE RIGHT
## OF ACTION UNDER THE NON-PROFIT ACT

Count III of Plaintiffs' Amended Complaint should likewise stand.  Defendant's argument that Plaintiffs are limited to a review by the commissioner and the imposition of the civil fines described in MCLA 500.2006(13) simply ignores the plain language of the statute.  **First**, MCLA 500.2006(13) begins with the phrase, "<u>[i]n addition to any other penalty provided by law. . .</u>" **Second,** Section 402 of the Non-Profit Act, expressly provides that it shall not be construed to diminish the right of a person to bring an action for damages under this section.  MCLA 550.1402(8).[6]  **Third**, the Michigan Administrative Code, R550.102 merely grants an aggrieved person a right to an administrative remedy for a violation of Section 402, it does not limit that persons ability to avail itself of <u>additional</u> rights.

COX, HODGMAN & GIARMARCO, P.C.

Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

---

[6]A "[p]erson" is defined to be "an individual, corporation, partnership, organization, or association."  MCLA 550.1107(3).

## CONCLUSION

Defendant's motion should be denied for the reasons stated above.

COX, HODGMAN & GIARMARCO, P.C.

By: _____

**WILLIAM H. HORTON** (P31567)
**LINDA M. WATSON** (P45320)
**SEAN M. WALSH** (P48724)
Attorneys for Plaintiffs
Tenth Floor Columbia Center
101 W. Big Beaver Road
Troy, Michigan  48084-5280
☎ (248) 457-7000

**MICHAEL QUAINE** (P49369)
Co-Counsel for Plaintiffs
23255 Commerce Drive
Farmington Hills, Michigan 48335
☎(248) 699-5562

Dated:  February 9, 2004

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHAEL A. GENORD, M.D.**, et al,

        Plaintiffs,

vs.

        Case No.: 03-72950
        HON. BERNARD A. FRIEDMAN
        MAGISTRATE JUDGE VIRGINIA M. MORGAN

**BLUE CROSS AND BLUE SHIELD OF
MICHIGAN**, a Michigan non-profit
healthcare corporation,

        Defendant.

---

**WILLIAM H. HORTON** (P31567)
**LINDA M. WATSON** (P45320)
**SEAN M. WALSH** (P48724)
Attorneys for Plaintiffs
COX, HODGMAN & GIARMARCO, P.C.
Tenth Floor Columbia Center
101 W. Big Beaver Road
Troy, Michigan 48084-5280
☎(248) 457-7000

**MICHAEL P. QUAINE** (P49369)
Co-Counsel for Plaintiffs
23255 Commerce Drive
Farmington Hills, Michigan 48335
☎(248) 699-5562

**JOSEPH A. FINK** (P13428)
**KATHLEEN A. LANG** (P34695)
**JONATHAN S. GROAT** (P58547)
Attorneys for Defendant
DICKINSON WRIGHT, PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
☎(313) 223-3500

---

## PROOF OF SERVICE

**TONI NICHOLS ROAN**, states that on February 9, 2004, she served, via first class U.S.

mail, a copy of the following documents:

①.    Plaintiffs' Brief in Response to Defendant's Motion to Dismiss; and

②.    this Proof of Service.

upon:

**JOSEPH A. FINK, ESQ.**
DICKINSON WRIGHT, PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226

**MICHAEL P. QUAINE, ESQ.**
23255 Commerce Drive
Farmington Hills, Michigan 48335

the same being their last known addresses.

I declare the above statements are true to the best of my knowledge, information and belief.

TONI NICHOLS ROAN

COX
HODGMAN &
GIARMARCO, P.C.
Attorneys and Counselors at Law

Tenth Floor Columbia Center • 101 West Big Beaver Road • Troy, Michigan 48084-5280 • Phone (248) 457-7000 • Fax (248) 457-7001

2